**ST. LOUIS UNIVERSITY, Appellant,**

v.

**HESSELBERG DRUG COMPANY,
Respondent.**

No. ED 77539.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 14, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 9, 2001.

Application for Transfer Denied
Feb. 13, 2001.

Rex Carr, East St. Louis, IL, for appellant.

David P. Donovan, N.W. Washington, DC, for respondent.

TEITELMAN, Judge.

Appellant St. Louis University (hereinafter, "SLU") appeals the judgment entered in the Circuit Court of the City of St. Louis granting Respondent Hesselberg Drug Company's motion to dismiss SLU's claim for contribution. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 1978, a polio vaccine was administered to Daniel Callahan, Jr. by his pediatrician, Dr. Fetick. The vaccine Daniel received, Orimune, was manufactured and distributed by Lederle Laboratories, a division of American Cyanamid Co. ("Cyanamid") and sold to Dr. Fetick by Hesselberg Drug Company ("Hesselberg"). Daniel developed a bacterial infection a few weeks later. During treatment for the bacterial infection by the staff of Cardinal Glennon Hospital ("Cardinal Glennon"), it was discovered that Daniel had contracted poliomyelitis which resulted in permanent triplegia.

Daniel Callahan, by his next friend and mother, Vickie Callahan, filed suit against Cardinal Glennon; SLU, the staff physician's employer; Dr. Fetick; and Cyanamid in the Circuit Court of the City of St. Louis, Cause No. 852–00091. This suit consisted of medical malpractice claims against the medical providers and a products liability claim against the polio vaccine's manufacturer. Dr. Fetick entered into a settlement with the plaintiff before the trial. Daniel dismissed his claim against Cyanamid the day after corporate representatives of Cyanamid falsely testified in depositions that its polio vaccine

was manufactured in compliance with federal regulations and no defective vaccine was ever distributed by Cyanamid.

The case proceeded to trial solely on the malpractice claims, and judgment was entered against Cardinal Glennon and SLU in the amount of $16,000,000.00 (later reduced to $15,710,000.00). *Callahan v. Cardinal Glennon, et al.*, 863 S.W.2d 852 (Mo. banc 1993) (hereinafter, *Callahan* ). The evidence showed that had Daniel Callahan been properly treated by Cardinal Glennon and SLU with the correct antibiotic, the endotoxins would not have been released in his immune system and the immune system would not have been suppressed to allow the polio virus to overcome the suppressed immune system, resulting in paralysis. SLU paid a total of $14,724,731.44 in satisfaction of that judgment. The only issue presented to and decided by the *Callahan* jury was whether Cardinal Glennon and SLU provided substandard care to Daniel in treating his bacterial infection. The issue of whether or not a defective vaccine contributed to Daniel's injuries was never presented to the jury.

It was subsequently discovered in actions filed against the United States in the United States District Court for the District of Maryland by other injured children that Cyanamid, the vaccine's manufacturer, had in fact failed to manufacture or test the polio vaccine administered to Daniel in compliance with government regulations. Discovery showed that Cyanamid's testimony in *Callahan* was false. Contribution suits followed. Cardinal Glennon, Dr. Fettick and SLU sought contribution from Cyanamid and Hesselberg in Missouri state court. SLU also brought suit against the United States in the federal district court, as the United States was responsible for regulation of production and approval for sale of the polio vaccine.

In the Missouri litigation, *St. Louis University, et al. v. American Cyanamid Co., et al.*, Cause No. 942–11090, Cyanamid moved for partial summary judgment on the issue of causation, arguing that the *Callahan* malpractice judgment precluded SLU from establishing the causation necessary to prove that the polio vaccine manufactured and distributed by Cyanamid and retailed by Hesselberg was defective and caused Daniel to contract poliomyelitis and become paralyzed.

The Missouri case was voluntarily dismissed by SLU without prejudice on September 29, 1998, on Cyanamid's motion that the United States was an indispensable party to the action and the United States could not be served in Missouri. SLU then refiled in the Maryland District Court and attempted to join both Cyanamid and Hesselberg as defendants in a case to be consolidated with the pending federal tort claim against the United States. Hesselberg successfully contested personal jurisdiction in that court and was dismissed without prejudice.

In April 1999, the Maryland District Court in the federal tort claim ruled that the *Callahan* judgment collaterally estopped SLU from proving that the defective vaccine, and not SLU's negligence, caused Daniel's paralysis in its contribution action against the United States. *St. Louis University v. United States*, No. JFM–95–3639 (D.Md. Apr. 29, 1999).[1] The court determined that SLU had failed to meet its burden to prove causation because

1. Specifically, the federal court decided that, because of the jury verdict in *Callahan*, SLU was collaterally estopped from contesting four facts that the jury had necessarily already determined:

    1. SLU's conduct in treating Danny Callahan's bacterial infection fell below the prescribed standard of care and constituted negligence;

    2. but for SLU's treatment of the bacterial infection, Danny's immune system would not have been suppressed;

    3. but for the suppression of Danny Callahan's immune system by SLU's negligence, the live polio virus would not have been able to replicate fast enough to result in poliomyelitis; and

    4. but for SLU's negligence, Danny Callahan would not be paralyzed.

(1) the testimony of SLU's experts was insufficient to establish that the alleged excessive neurovirulence of the Orimune caused Danny Callahan to contract polio, and (2) because none of SLU's experts expressed an opinion that, if Danny Callahan had been given a vaccine that satisfied the neurovirulence requirements of the applicable regulations, he would not have contracted polio.

In July 1999, the same Maryland District Court ruled that the *Callahan* judgment also collaterally estopped SLU from litigating that issue in SLU's contribution claim against Cyanamid. *American Cyanamid v. St. Louis University,* No. JFM–99–1316 (D.Md. July 30, 1999). These orders have been appealed to the Fourth Circuit Court of Appeals. The appeals are pending.

In September, 1999, SLU refiled its contribution claim against Hesselberg in the Circuit Court of the City of St. Louis. Hesselberg moved to dismiss that action. Judge Mason granted Hesselberg's motion based on (1) SLU's failure to state a claim for failure to warn and (2) the alleged collateral estoppel effect of the Maryland District Court's rulings in SLU's actions against the United States and Cyanamid. SLU appeals from that Order.

On appeal, SLU argues that the trial court erred in (1) dismissing its strict liability contribution claim on the grounds that a drug retailer cannot be held liable for injuries due to a defective drug that the retailer could not have foreseen was defective, because SLU's contribution claim is based on a manufacturing defect, not failure to warn of foreseeable harm; and (2) dismissing its contribution claim under the doctrine of collateral estoppel because the trial court should not have relied on a federal court ruling that was inconsistent with the court's previous determination of the same issues. SLU argues that it did not have a full and fair opportunity to litigate whether a defective vaccine contributed to Daniel Callahan's injuries.

## STANDARD OF REVIEW

We will affirm the judgment of dismissal if it can be sustained on any ground supported by the motion to dismiss. *Id.* Although the trial court's evidentiary findings warrant deference from this Court, that deference does not apply where the law has been applied in error. *Ryan,* 16 S.W.3d at 648 (citations omitted). We review all determinations of law de novo. *Id.*

Collateral estoppel is an affirmative defense. Rule 55.08. Sustaining a motion to dismiss based on an affirmative defense requires that the defense be irrefutably established by the pleadings. *Ryan v. Ford,* 16 S.W.3d 644, 648 (Mo. App. W.D.2000), citing *Murray v. Fleischaker,* 949 S.W.2d 203, 205 (Mo.App. S.D. 1997). When reviewing the trial court's dismissal of a cause of action, we examine "the pleadings, allowing them their broadest intendment, treating all facts alleged as true, and construing the allegations favorably to the pleader." *Bellos v. Winkles,* 14 S.W.3d 653, 655 (Mo.App. E.D.2000) (citation omitted).

## DISCUSSION

Hesselberg's motion to dismiss argued that SLU is collaterally estopped from bringing this action and that SLU had failed to state a claim upon which relief may be granted. The trial court granted the motion on both grounds, determining that Hesselberg could not be liable when a Maryland federal court had already determined that SLU could not prove its theory of causation. Specifically, if SLU could not prove that the failure of Cyanamid, the drug's manufacturer, to meet federal regulations caused Danny Callahan to contract polio, then Hesselberg, the retail drug company from which the vaccine was purchased, was not strictly liable for being in the stream of commerce that caused the vaccine to be delivered to Callahan. The trial court also determined that SLU's

claim against Hesselberg was barred by collateral estoppel because of the prior Maryland federal court decisions. The trial court did not err in dismissing SLU's claim.

A non-party to an earlier adjudication may assert collateral estoppel, or issue preclusion, against a party to the prior suit to bar relitigation of an issue in a subsequent proceeding. *Mueller v. Lemay Bank & Trust Co.*, 990 S.W.2d 690, 691 (Mo.App. E.D.1999), citing *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713, 719 (Mo. banc 1979). Nevertheless, "[w]here there is a question of whether a previous decision went to the merits of the case, no preclusive effect is given to the earlier decision." *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 856 (Mo.App. E.D. 1999), citing *Hangley v. American Family Mutual Ins. Co.*, 872 S.W.2d 544, 548 (Mo. App. W.D.1994). In determining if a claim is barred by collateral estoppel, we consider four factors: (1) was the issue decided in the prior adjudication identical with the issue presented in the present action; (2) did the prior adjudication result in a judgment on the merits; (3) was the party against whom collateral estoppel is asserted a party or in privity with a party to the prior adjudication; and (4) did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate in the prior suit. *Horwitz v. Horwitz*, 16 S.W.3d 599, 603 (Mo.App. E.D. 2000), citing *Meckfessel v. Fred Weber, Inc.*, 901 S.W.2d 335, 339 (Mo.App. E.D. 1995).

First, the issue decided in the previous adjudication is identical to the issue presented in the current action. In SLU's suit against the United States and the current action against Hesselberg, SLU alleged that the oral polio vaccine administered to Danny Callahan was defective because it did not comply with certain federal regulations. SLU's contribution claim against Hesselberg necessarily would re-

quire SLU to prove that the alleged defect in the vaccine that Hesselberg sold to Dr. Fetick caused Callahan's injuries. The Maryland District Court determined that "none of SLU's experts have expressed an opinion that, if Callahan had been given a vaccine that satisfied the neurovirulence requirement of the applicable regulations, he would not have contracted polio." [2] As such, the Maryland District Court previously decided the issue that SLU seeks to raise now in a Missouri court.

Second, the prior litigation resulted in a judgment on the merits. A "judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial." *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d at 856 (citations omitted). In granting summary judgment in favor of the United States, the federal district court relied on the ground that SLU had failed to prove that the alleged regulatory violations caused Danny Callahan to contract polio. Therefore, the court did not render its decision on a preliminary or technical point. Furthermore, Missouri courts have held that a summary judgment is a determination on the merits for collateral estoppel purposes. *Williams v. Rape* 990 S.W.2d 55, 56 (Mo. App. W.D.1999); *Meyer v. Enoch*, 807 S.W.2d 156, 159 (Mo.App. E.D.1991).

Penultimately, SLU was a party to the judgment in the previous decision.

Fourth, SLU had a full and fair opportunity to litigate the causation issue in *SLU v. United States*. In making this determination, we further consider the following factors: (1) did the person against whom estoppel is asserted have a strong incentive to litigate the first action; (2) does the second forum afford the party against whom estoppel is asserted procedural opportunities not available in the

2. Without presenting this necessary evidence, then, SLU was deemed to have not met its burden of proof as to causation, and summary judgment was granted against it.

first action; (3) is the prior judgment, upon which estoppel is based, inconsistent with one or more prior judgments; and (4) was the forum in the first action substantially inconvenient to the party against whom estoppel is asserted. *Bi–State Development Agency v. Whelan Sec. Co.,* 679 S.W.2d 332, 336–337 (Mo.App. E.D.1984), citing *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 330–332, 99 S.Ct. 645, 651–652, 58 L.Ed.2d 552 (1979); *United States v. Karlen,* 645 F.2d 635, 639 (C.A.8, 1981).

SLU had a strong incentive to litigate the first action and, as the plaintiff, chose the forum. SLU was given ample opportunity to present evidence to the federal court demonstrating that the alleged regulatory violations caused Danny Callahan to contract polio, but could not meet this burden. Furthermore, the Maryland District Court's judgment does not conflict with any previous judgments.[3] As such, SLU was not denied a full and fair opportunity to litigate this issue.

SLU argues that the Maryland District Court's ruling is inconsistent with a ruling entered in Missouri state court prior to SLU filing its case in federal court. This argument is not persuasive. The Missouri court determined that SLU was not collaterally estopped from bringing an action for contribution against Cyanamid and Hesselberg. The Maryland District Court likewise determined that SLU could bring a contribution claim. However, the Maryland District Court subsequently determined, after hearing SLU's evidence, that it could not prove causation. This determination is not inconsistent with the Missouri court's prior ruling.

**3.** SLU argues that it never had a fair opportunity in the original malpractice case to litigate whether SLU's negligence or a defect in the polio vaccine caused Daniel Callahan's paralysis, and the U.S. District Court erred in assigning collateral estoppel to that case on the issue of causation. That question is for the Fourth Circuit to decide. The question before this Court is whether the summary judgment entered against SLU in U.S. District

The trial court did not err in dismissing SLU's cause of action against Hesselberg, as it is barred by the doctrine of collateral estoppel.[4] The judgment of the trial court granting Hesselberg's motion to dismiss is affirmed.

ROBERT G. DOWD, Jr., P.J., and MARY RHODES RUSSELL, J., concur.

court collaterally estops SLU from relitigating the same issue against a different party in a different forum.

**4.** We need not reach SLU's remaining point on appeal, as we may affirm a dismissal on any correct ground. *Ampleman v. Scheweppe,* 972 S.W.2d 329, 332, (Mo.App. E.D.1998).